[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

No. 96-3074

---

D. C. Docket No. 95-1718-CIV-T-23A

AMERICAN EXPRESS FINANCIAL ADVISORS, INC.
f.k.a. IDS FINANCIAL SERVICES, INC.,
and IDS LIFE INSURANCE COMPANY,

                                        Plaintiffs-Appellants,

                    versus

DENNIS MAKAREWICZ,
and TRAVIS TUCILLO,

                                        Defendants-Appellees.

---

Appeal from the United States District Court
for the Northern District of Georgia

---

**(September 9, 1997)**

Before TJOFLAT and BARKETT, Circuit Judges, and HOWARD*, Senior
District Judge.

---
*Honorable Alex T. Howard, Jr., Senior U.S. District Judge for
the Southern District of Alabama, sitting by designation.

TJOFLAT, Circuit Judge:

American Express Financial Advisors, Inc. ("American Express"), and IDS Financial Services, Inc. ("IDS") appeal the district court's denial of injunctive relief and its administrative closure of their lawsuit pending industry arbitration.  We hold that we lack jurisdiction over the appeal from the district court's decision to compel arbitration as to the damages claims.  Regarding the district court's denial of injunctive relief, however, we find that we have jurisdiction, and we reverse.


I.

Appellants American Express and IDS provide financial services and insurance to individual and organizational clients nationwide.  Appellees Dennis Makarewicz and Travis Tuccillo worked as financial advisors for appellants until September 14, 1995, when they ended their relationships with American Express and IDS and started their own financial consulting business.  According to the appellants' original complaint, filed October 16, 1995, Makarewicz and Tuccillo took approximately 200 of appellants' clients with them when they left, departures which allegedly resulted in the withdrawal of approximately $20 million in investments managed by the appellants.  In luring away these customers, appellees allegedly violated contractual agreements that they had signed as an original condition of employment by

2

appellants.[1]

_____

[1]    Section IV(1) of the agreements signed by Makarewicz and Tuccillo stated, in part, the following:

(a) You must not . . . :

    (1) Encourage or induce anyone to terminate an agreement with [American Express or IDS] without [American Express'] consent;

    (2) Encourage or induce any Client to stop carrying out any action related to a Product or Service it acquired from or through [American Express] . . . ;

    (3) Promote or make unwarranted claims against [American Express or IDS];

    (4) Encourage or induce any Client to sell, surrender or redeem any Product or Service distributed or offered by [American Express or IDS] without [American Express'] consent.

(b) All of the above provisions apply while the Agreement is in effect <u>and after it ends</u>.

(c) All Records and Materials are the property of [American Express or IDS].  All rights to Records and Materials that you prepare or create in connection with the performance of this Agreement are hereby assigned to [American Express].  You agree that you will not reproduce or allow the reproduction of the Records and Materials in any manner whatsoever, except pursuant to written policy or consent of [American Express].

(d) . . . . Such Records and Materials are open to inspection by [American Express] at any time during your normal business hours.  You must return them and all copies of them to [American Express] at any time on request.  <u>When this agreement ends</u>, all of these items remain [American Express] property.  You must return all of them, together with any licenses you have or control, without demand or compensation.

(e) While this agreement is in effect <u>and after it ends</u>, you agree that you will not reveal the contents of any [American Express] property or allow them to be revealed, except in connection with carrying out your duties under the Agreement.  You will not reveal the names and addresses of [American Express] Clients or any other information about them, including financial

3

On October 16, 1995, appellants brought this diversity suit against Makarewicz and Tuccillo in the United States District Court for the Middle District of Florida. They sued for breach of contract, misappropriation of trade secrets, breach of fiduciary duty, conversion, and intentional interference with prospective business relationships. Appellants sought both injunctive relief and compensatory and punitive damages. With regard to damages, however, the complaint admitted that "[p]ortions of this dispute may be arbitrable pursuant to the [National Association of Securities Dealers' ("NASD")] Code of Arbitration Procedure." Nevertheless, appellants sought both preliminary injunctive relief to preserve the status quo pending arbitration and permanent injunctive relief for whatever claims were not arbitrable.

---

information. You also will not reveal any of this information about potential Clients, to whom a presentation has been made by an [American Express] Planner, who might reasonably be expected to do business with [American Express or IDS]. You will not allow any of this information about Clients or potential Clients to be revealed.

> (f) You agree that the identity of Clients and potential Clients is confidential information. For one year after this Agreement ends, you agree not to use any such information in connection with any business in competition with [American Express or IDS].

> (g) For one year after this Agreement ends, you agree that you will not . . . directly or indirectly offer for sale, sell or seek an application for any Product or Service issued or provided by any company to or from a Client you contacted, dealt with or learned about while you represented [American Express or IDS] or because of that representation.

(emphasis added).

On October 17, appellees initiated NASD arbitration.[2]  On October 18, appellants moved for a temporary restraining order ("TRO") pursuant to Fed. R. Civ. P. 65.  On October 19, the appellees moved for a hearing on this motion, and on October 27, they moved for "an order pursuant to the Federal Arbitration Act staying this action and compelling arbitration."[3]  The district court granted the appellees' motion for a hearing on the issue of preliminary injunctive relief.  At the November 1, 1995 hearing, the district court listened to the arguments of both sides, but it did not rule on either the appellant's motion for a preliminary injunction or the appellees' motion to compel arbitration.

Months passed.  On April 8, 1996, appellants moved for a declaration that no elements of the dispute were subject to NASD arbitration; they argued that the appellees had misrepresented their standing to initiate NASD arbitration.  The district court did not respond.  On June 30, 1996, the district court finally issued a terse order in which it concluded that "all of the

---

[2]    Appellees have never answered the appellants' complaint.  Instead, they have adopted the position, in response to various motions filed by the appellants, that all of the claims the appellants have asserted -- both legal and equitable -- are subject to mandatory NASD arbitration.

[3]    Appellees were apparently referring to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (1994) ("FAA").  Both parties apparently accept that this act applies to the present case, and we find no reason to disagree.  See generally Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 476, 109 S. Ct. 1248, 1254, 103 L. Ed. 2d 488 (1989) ("It is undisputed that this contract falls within the coverage of the FAA, since it involves interstate commerce . . . .").

claims raised in this action are encompassed by the standard NASD arbitration agreements executed by the parties." The court reached this conclusion "[f]or the reasons discussed by the defendants (1) in their October 27, 1995, memorandum, (2) at the November 1, 1995, oral argument, (3) in their May 1, 1996, memorandum opposing the plaintiffs' motion for a ruling of non-arbitrability, and (4) in their other filings." The district court therefore granted appellees' motion to compel arbitration as to all claims and denied appellants' motion for injunctive relief. The court administratively closed the case and removed it from its docket. American Express and IDS took this appeal.

II.

As an initial matter, we must address our jurisdiction over the present appeal. The FAA currently governs the appealability of orders disposing of requests to compel arbitration. See 9 U.S.C. § 16 (1994). Section 16(b) of the act provides as follows: "Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order . . . granting a stay of any action under section 3 of this title . . . ." 9 U.S.C. § 16(b) (1994). The district court in this case granted a stay under section 3 of the FAA.[4] The district

---

[4]     Section 3 states the following:

        If any suit or proceeding be brought in any
        of the courts of the Unites States upon any
        issue referable to arbitration under an
        agreement in writing for such arbitration,
        the court in which such suit is pending, upon

court did not certify this decision for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Therefore, we have no jurisdiction over the district court's decision to stay the present action pending arbitration.[5]  We cannot, at present, resolve the merits of the defendants' claims for relief.

We do have jurisdiction, however, to review the district court's denial of appellants' request for preliminary and permanent injunctions.  The district court explicitly denied appellants' motions for injunctive relief.  As stated in 28 U.S.C. § 1292 (1994), the courts of appeals have jurisdiction over "[i]nterlocutory orders of the district courts . . . refusing or dissolving injunctions."  § 1292(a)(1).  Therefore, we may review this aspect of the district court's order.

III.

being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3 (1994).  Although the district court did not cite any authority for its order to stay the present action, section 3 clearly provided such authority.

[5]    Section 16(a)(3) provides the courts of appeals with jurisdiction over "a final decision with respect to an arbitration that is subject to this title."  9 U.S.C. § 16(a)(3) (1994).  Appellants might argue that the district court's decision to submit appellants' claims to arbitration was a final decision.  We have held, however, that "orders granting or denying requests to compel arbitration are not final decisions if entered in the course of ongoing actions for legal or equitable relief on the underlying claims."  Thomson McKinnon Sec., Inc. v. Salter, 873 F.2d 1397, 1399 (11th Cir. 1989) (per curiam). Hence, we have no jurisdiction over this order.

The district court apparently denied appellants' motion for preliminary and permanent injunctions on the ground that the NASD arbitrator should decide this issue.[6] When the district court submitted appellants' equitable claims to the arbitrator, the court in effect held that the parties had agreed to arbitrate the question of injunctive relief. We reverse, however, because the plain terms of the contracts in this case contradict the district court's conclusion.

Under the FAA, upon motion of a party, district courts must compel arbitration of all claims subject to arbitration. <u>See Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 - 19, 105 S. Ct. 1238, 1241 - 42, 84 L. Ed. 2d 158 (1985). On the other hand, "the FAA does not require parties to arbitrate when they have not agreed to do so, . . . nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." <u>Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 478, 109 S. Ct. 1248, 1255, 103 L. Ed. 2d 488 (citations omitted). Because parties are free to structure their arbitration agreements as they see fit, "they may limit by contract the issues which they will arbitrate." <u>Id.</u> at 479, 109 S. Ct. at 1256. "When deciding whether the parties agreed to

---

[6] Because of its brevity, the district court's order is unclear on this point. One of the arguments made by appellees, however, was that appellants should seek injunctive relief from the NASD arbitrator rather than the district court. The court's order incorporated this argument by reference. We find that the district court denied appellants' request for injunctive relief because the court decided that this claim should be arbitrated.

arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc., v. Kaplan, 514 U.S. 938, ---, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995).

Under Florida law, the terms of the contract should control where the rights and interests of the parties are definitely and clearly stated. Atlanta & St. A.B. Ry. Co. v. Thomas, 53 So. 510, 513 (Fla. 1910). Section IV(3)(b) of the agreements signed by Makarewicz and Tuccillo provided as follows:

> If a dispute involving this Agreement is submitted for arbitration under the Code of Arbitration Procedure of the National Association of Securities Dealers or otherwise, you agree that [American Express] is entitled to an injunction from a court of competent jurisdiction to keep you from violating these restrictions while the arbitration is pending.

This provision leaves no room for ambiguity: the parties intended to allow "a court of competent jurisdiction" -- the United States District Court for the Middle District of Florida -- to provide injunctive relief. Therefore, we hold that the district court erred in denying injunctive relief on the ground that the parties intended the arbitrator to decide whether to grant such relief.[7]

---

[7] Appellees might argue that the district court merely submitted to the NASD arbitrator the issue of who should decide whether appellants were entitled to an injunction. Given that their agreement indicates that they intended to arbitrate certain issues, appellees might argue that the issue of who should grant injunctive relief should be committed to the arbitrator in the absence of clear evidence that such issues should be decided by the district court. The Supreme Court, however, has held otherwise: "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakabl[e]' evidence that they did so." First Options of

9

IV.

On remand, the district court should determine as soon as possible[8] whether to grant appellants' request for preliminary and permanent injunctions.  In conclusion, the appeal from the district court's order staying appellants' damages claims is DISMISSED, but the district court's order denying appellants' requests for temporary and permanent injunctive relief is REVERSED.

Chicago, 514 U.S. at ---, 115 S. Ct. at 1924 (quoting AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418 - 19, 89 L. Ed. 2d 648 (1986)).  We find, to the contrary, that the parties in this case deliberately assigned to the district court the question whether appellants would be entitled to injunctive relief.

[8]     Appellants' claims for temporary and permanent injunctive relief remained pending for 8½ months.  The two provisions which barred appellees from competing with appellants, sections IV(1)(f) and IV(1)(g), by their terms lasted for only one year after the date of appellees' separation.  By the time appellants reached oral argument before this court, therefore, the two provisions central to their claim for injunctive relief had been mooted -- principally because of the district court's delay in ruling on their motions.  Luckily for appellants, the one-year time bar did not apply to all of the provisions of their agreements with appellees.  It is these remaining provisions which the district court must consider on remand.