[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 27, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-15929

_____

D. C. Docket No. 99-08624 CV-DMM


BRANDON, JONES, SANDALL, ZEIDE,
KOHN, CHALAL & MUSSO, P.A., a Florida
Corporation, d.b.a. Orthopedic Center of Palm
Beach County,

                        Plaintiff-Appellee-
                        Cross-Appellant,

    versus

MEDPARTNERS, INC., a Delaware
Corporation, MEDPARTNERS ACQUISITION
CORPORATION, a Delaware Corporation,
MEDPARTNERS PHYSICIAN MANAGEMENT,
L.P., a Delaware Corporation,

                        Defendants-Appellants-
                        Cross-Appellees.


_____

No. 01-16079

_____

D. C. Docket No. 01-08748 CV-DMM

MEDPARTNERS, INC., MEDPARTNERS
ACQUISITION CORPORATION,

Plaintiffs-Appellants-
Cross-Appellees,

versus

AMERICAN ARBITRATION
ASSOCIATION,

Defendant-Appellee.

BRANDON, JONES, SANDALL,
ZEIDE, KOHN, CHALAL & MUSSO,
P.A., d.b.a. Orthopedic Center of Palm
Beach County, JOSEPH B. CHALAL,
MARVIN A. KOHN, EMILIO MUSSO,
EDWARD W. SANDALL, MICHAEL S.
ZEIDE,

Defendants-Appellees-
Cross-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

**(November 27, 2002)**

Before EDMONDSON, Chief Judge, BLACK and COX, Circuit Judges.

PER CURIAM:

The parties to these two separate appeals litigated three different cases across federal and state courts in two different states. The district court, in which the different cases were collected, entered an omnibus order that compelled arbitration. The parties appeal, presenting arbitration-related questions about our jurisdiction and about the merits of the case.[1]

BACKGROUND

I.      Contract Formation

In 1994, MedPartners, Inc. contracted with Orthopedic Center of Palm Beach County (a collection of doctors) to manage the Orthopedic Center's clinic over the next 20 years. According to the contract between the parties ("the Agreement"), MedPartners pays the Orthopedic Center a monthly payment that is based, in part, upon the doctors' productivity.

The Agreement requires Orthopedic Center (that is, the doctors) to maintain the same level of productivity -- the contract uses the term "industry" -- as they

---

[1] MedPartners's motion to file a reply brief in appeal No. 01-16079 is granted.

3

maintained before the Agreement to be eligible for a certain minimum monthly payment. If Orthopedic Center evidences a "lack of industry," the Agreement provides that MedPartners can pay Orthopedic Center less than the minimum monthly payment required by the Agreement and, eventually, terminate the Agreement.

The Agreement has two arbitration clauses. The precise scope of the clauses is hotly debated by the parties. One arbitration clause basically requires the parties to arbitrate disputes over the amount of any payment.[2] And the other arbitration clause requires the parties to arbitrate disputes over whether the Agreement can be properly terminated (in other words, whether a party is in breach).[3]

## II. The Dispute and Initial Arbitration

---

[2] Section G of the Agreement requires arbitration to resolve a dispute over any payment amount:

> In the event of a dispute as to what amount is owed by MEDPARTNERS in any situation where a payment is due, including but not limited to monthly payments, the matter shall be resolved by binding arbitration under the auspices of the American Arbitration Association . . . . For purposes of the foregoing, if a majority of the Arbitrators rules (a) that one party owes the other party more than $50,000, the first party shall be deemed "the losing party;" or (b) that there has been a breach of this Agreement sufficient to justify termination by the complaining party, said party shall be deemed "the losing party."

[3] Section 6.2(d)(1) of the Agreement provides for termination of the agreement for breach of contract:

> If [a] party [ ] maintains there is a breach [of the contract], it shall serve a written demand for arbitration upon the alleged breaching party. The matter shall be resolved by binding arbitration under the auspices of the American Arbitration Association . . . .

4

In April 1999, MedPartners started paying Orthopedic Center less than the minimum monthly payment outlined in the Agreement. And, in May 1999, MedPartners sent Orthopedic Center a letter notifying Orthopedic Center that MedPartners intended to terminate the Agreement in six months if the doctors did not improve their "level of industry." Not surprisingly, the letter created some coolness on the doctors' part.

Orthopedic Center first demanded, and MedPartners agreed, to arbitrate their dispute over the amount of the April 1999 monthly payment. The parties began to arbitrate, in Florida, only the issue of the proper amount of the April payment before the American Arbitration Association ("AAA"). But, after the May payment was also less than the minimum monthly payment required by the Agreement, Orthopedic Center modified its arbitration complaint to add claims for the May payment and for anticipatory repudiation, and requested over $40 million in damages.

MedPartners objected to the anticipatory-repudiation claim as outside the scope of the Agreement's arbitration clauses. The AAA arbitration panel disagreed. The panel concluded that the anticipatory-repudiation claim was arbitrable (that is, within the scope of the Agreement's arbitration clauses) and

5

continued with the arbitration in Florida, both on Orthopedic Center's claims for adjustment in the April and May payments and on Orthopedic Center's anticipatory-repudiation claim.

III.    MedPartners's Lawsuits (Dist. Case Nos. 01-8747 and 01-8748)

Five days later, MedPartners sued AAA, but not Orthopedic Center, in Alabama state court, seeking to enjoin the Florida arbitration.  In an ex parte proceeding, the Alabama state court entered a TRO, enjoining AAA from continuing the arbitration on any issue.  And, the Alabama state court issued a notice of hearing on a preliminary injunction.  The AAA, according to its internal policy not to get involved in litigation over claims they are arbitrating, did not appear at the preliminary-injunction hearing.

At the one-sided hearing, the Alabama state court converted the hearing from a preliminary-injunction hearing into a permanent-injunction hearing.  The state court thereafter issued a permanent injunction barring AAA from arbitrating Orthopedic Center's claims, except the claim for April's payment.

After obtaining the TRO from the state court, MedPartners filed suit against Orthopedic Center in the United States District Court for the Northern District of

6

Alabama and asserted claims of fraud and breach of contract. This suit is district court case No. 01-8747 ("MedPartners's breach of contract/fraud lawsuit").[4] Orthopedic Center filed a motion to dismiss, to transfer, or to stay the case in favor of arbitration.

The parties returned to the arbitration being conducted in Florida. In the arbitration, MedPartners argued that the Alabama state court injunction against AAA prevented the arbitrators from continuing the arbitration of the anticipatory-repudiation claim. In response, Orthopedic Center argued that the injunction was against AAA only, not the individual arbitrators (who were neither employed nor controlled by AAA), and that the arbitrators, therefore, were not bound by the injunction. The arbitrators voted to proceed despite the injunction.

MedPartners immediately got the Alabama state court to issue an order to show cause. AAA then obtained counsel and removed the Alabama state court case to federal district court. As removed, the suit became district court case No. 01-8748 ("MedPartners's injunction lawsuit").[5] The district court ultimately determined that the arbitrators were in contempt of the injunction, forced them to

_____

[4] The number 01-8747 was assigned this case when it was transferred to the Southern District of Florida. The case had a different number when it was pending before the Northern District of Alabama.

[5] The number 01-8748 was assigned this case when it was transferred to the Southern District of Florida. The case had a different number when it was pending before the Northern District of Alabama.

purge their contempt by agreeing not to arbitrate the anticipatory-repudiation claim, and sanctioned them.

Then, MedPartners added Orthopedic Center as a defendant to the injunction case (No. 01-8748). And, MedPartners's injunction lawsuit (No. 01-8748) and MedPartners's breach of contract/fraud case (No. 01-8747) were consolidated.[6] Orthopedic Center then filed -- in September 1999 -- an emergency motion to dissolve the injunction against AAA. After waiting a year for the district court to rule on their emergency motion, Orthopedic Center appealed to this Court in September 2000.

IV.    Orthopedic Center's Lawsuit (Dist. Case No. 99-8624)

In the meantime, Orthopedic Center had filed its own complaint against MedPartners in Florida state court. Orthopedic Center's complaint sought an order compelling arbitration of its anticipatory-repudiation claim. MedPartners removed the case to the Southern District of Florida; it was assigned to Judge Middlebrooks. The case became district court case No. 99-8624 ("Orthopedic Center's lawsuit"). In November 1999, the district court dismissed Orthopedic Center's complaint

---

[6] MedPartners filed a motion requesting that the cases be consolidated, and the district court granted that request.

because of the injunction against AAA: the district court believed that the Alabama injunction bound Orthopedic Center despite the fact that Orthopedic Center was not named in the injunction and was no party to the case at the time the injunction was granted. Orthopedic Center then appealed to this Court.

V.    Our First Pair of Opinions

We then decided both appeals. After deciding that the Alabama injunction did not bind Orthopedic Center, we directed Judge Middlebrooks in the Southern District of Florida to reinstate Orthopedic Center's complaint seeking to compel arbitration. And, we directed that MedPartners's two consolidated cases in the Northern District of Alabama be transferred to the Southern District of Florida. MedPartners's consolidated cases were assigned to Judge Middlebrooks. But, MedPartners's consolidated cases (Nos. 01-8747 & 01-8748) were never formally consolidated with Orthopedic Center's case seeking to compel arbitration (No. 99-8624).

VI.    The District Court's Order From Which the Appeal is Taken

After briefs and a hearing, Judge Middlebrooks issued an Omnibus Order that impacted on all three cases. In case No. 99-8624, Orthopedic Center's suit against MedPartners seeking to compel arbitration, Judge Middlebrooks entered an order compelling arbitration on all claims, denying Orthopedic Center's claim for attorneys' fees for frivolous litigation, and purporting to close the case. But, the order also explicitly notes that Judge Middlebrooks retained jurisdiction to enforce his orders, to "confirm, modify, amend, or vacate the Arbitrator's award," and to award attorneys' fees in association with the litigation and arbitration.

In case No. 01-8748, the Order dissolved the injunction in MedPartners's first lawsuit, dismissed the complaint, and closed the case.[7] Judge Middlebrooks explicitly retained jurisdiction in case No. 01-8748 only to award costs and attorneys' fees. For case No. 01-8747, MedPartners's suit asserting fraud and breach of contract claims against Orthopedic Center, Judge Middlebrooks stayed that case pending arbitration.

MedPartners filed two appeals from Judge Middlebrooks's Omnibus Order. MedPartners appeals in district court case No. 99-8624 (the case originally filed by Orthopedic Center seeking to compel arbitration). This appeal is appeal No. 01-15929. And, MedPartners appeals in district court case No. 01-8748 (the case in

---

[7] Judge Middlebrooks entered a copy of the Omnibus Order and a separate final judgment in case No. 01-8748.

10

which Judge Middlebrooks dissolved the injunction). This appeal is appeal No. 01-16079. Orthopedic Center cross-appealed in both appeals and argues that the district court erred by failing to award attorneys' fees for frivolous litigation under Florida Statute § 57.105.

DISCUSSION

I.     Jurisdiction

A.     The Appeal From Orthopedic Center's Lawsuit (App. No. 01-15929)

In support of jurisdiction in appeal No. 01-15929, MedPartners argues that the Omnibus Order resolved all the issues in district court case No. 99-8624 and that this appeal is an appeal in that case (No. 99-8624) only. Therefore, argues MedPartners, we have jurisdiction over this appeal as it is an appeal from a "final judgment." To analyze this argument, we must first determine from what, precisely, MedPartners appeals.

MedPartners's two Alabama lawsuits were consolidated and transferred to the Southern District of Florida; but, the two lawsuits (Nos. 01-8747 & 01-8748)

were never consolidated with Orthopedic Center's lawsuit (No. 99-8624), seeking to compel arbitration that was also pending in the Southern District of Florida before Judge Middlebrooks. Appeal Number 01-15929 is an appeal from district court case No. 99-8624. Because case No. 99-8624 was never consolidated with the Alabama cases, we look only to the disposition of case No. 99-8624 in the district court to decide whether we have jurisdiction over appeal No. 01-15929. See S+L+H S.p.A. v. Miller-St. Nazianz, Inc., 988 F.2d 1518, 1522-23 (7th Cir. 1993).

To decide if we have jurisdiction over appeal No. 01-15929, we must determine whether the order appealed from was a "final order."[8] "Final" orders, regardless of whether they compel arbitration or decline to compel arbitration, are appealable. 9 U.S.C. § 16; Green Tree Fin. Corp. v. Randolph, 121 S. Ct. 513, 519 (2000). When determining whether an order is final, it does not matter whether the parties before the district court initially sought substantive relief in addition to an order compelling arbitration. We focus on the purported "final" order and determine whether, at the time entered, the "order plainly disposed of the entire case on the merits and left no part of it pending before the court." Green Tree, 121 S. Ct. at 520.

---

[8] Unless the order appealed from -- an order that compels arbitration -- is a final order, we do not have jurisdiction. 9 U.S.C. § 16.

Orthopedic Center's amended complaint (Dist. No. 99-8624) sought an order (1) compelling arbitration, (2) dissolving the injunction ab initio in district court case No. 01-8748, (3) staying district court case No. 01-8747 in favor of arbitration, (4) awarding attorneys' fees for frivolous litigation under Fla. Stat. § 57.105, and (5) "retaining jurisdiction to enforce the Court's orders, to confirm the arbitrators' award, and to award attorneys' fees and costs" under the Agreement. The district court's Omnibus Order compelled arbitration, dissolved the injunction in case No. 01-8748, stayed case No. 01-8747, denied attorneys' fees under Fla. Stat. § 57.105, but explicitly "retain[ed] jurisdiction to enforce the Court's orders, to confirm, modify, amend, or vacate the Arbitrators' award, and to award or confirm the award of attorneys' fees and costs of this litigation and the arbitration," and "closed" the case.

The district court, in other words, ruled on all the relief requested by Orthopedic Center in its complaint and "closed" the case. In most cases, that conduct would lead us to conclude that the order was final. See Employers Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1321 (11th Cir. 2001) ("[G]enerally speaking, a decision of the district court is final when it disposes of all the issues framed by the litigation and leaves nothing for the district court to do but execute the judgment."). But, in this case, part of the relief requested (and

13

granted) was for the district court to retain jurisdiction to confirm the arbitration award and to award attorneys' fees associated with the litigation and the arbitration. This request (and grant) of retained jurisdiction contemplates that more is yet to come in this litigation.

Because the district court explicitly retained jurisdiction to award attorneys' fees, we cannot say, as in Green Tree, that the "order plainly disposed of the entire case on the merits and left no part of it pending before the court." Id. In this Circuit, a request for attorneys' fees pursuant to a contractual clause is considered a substantive issue; and an order that leaves a substantive fees issue pending cannot be "final." See Irena v. Arthur Murray Int'l, Inc., 833 F.2d 1472, 1476 (11th Cir. 1987) (concluding that, when party seeks attorneys' fees under contract between parties, an order that does not rule on the award of those attorneys' fees is not final). Because we consider Orthopedic Center's complaint to have raised the issue of an award of contracted-for attorneys' fees -- in the context of the litigation before the district court -- substantive issues are still pending before the district court.[9]  Cf. Employers Ins. of Wausau, 251 F.3d at 1322 (finding jurisdiction

---

[9] Both the amended complaint and the Omnibus Order contemplate that the parties soon will return to litigate attorneys' fees. It is immaterial that no motion for fees currently is pending in the district court. Cf. Corion Corp. v. Chen, 964 F.2d 55, 56-60 (1st Cir. 1992) (concluding district court which retained jurisdiction over arbitration suit may reconsider issues previously decided, preventing finality of compelled arbitration order).

14

"because the arbitration order disposes of all the issues framed by the litigation and leaves nothing for the district court to resolve").

Two additional facets of this case support our conclusion that issues are still pending before the district court, and, therefore, that the order appealed from is not "final." First, the Omnibus Order "closed" the case, instead of dismissing the case. See Filanto, S.p.A. v. Chilewich Int'l Corp., 984 F.2d 58, 61 (2d Cir. 1993) ("We see no jurisdictional significance to the docket entry marking the case as 'closed,' which we will assume was made for administrative or statistical convenience."); see also Campbell v. Dominick & Dominick, Inc., 872 F.2d 358, 360 (11th Cir. 1989)(order closing case for statistical purposes not final order); cf. Bank v. Pitt, 928 F.2d 1108, 1111 (11th Cir. 1991) (order granting motion to dismiss and directing that case be closed is final order). Second, the district court did not enter a separate final judgment in case No. 99-8624. Corion Corp, 964 F.2d at 56 (refusing, in arbitration context, to excuse absence of separate final judgment as mere formality).

The district court's order -- given the explicit retention of jurisdiction by the district court over the award of attorneys' fees, the closing (instead of dismissing) of the case, and the absence of a separately-filed final judgment -- is no final order. We, therefore, lack jurisdiction over appeal No. 01-15929, MedPartners's appeal

15

and Orthopedic Center's cross-appeal from district court case No. 99-8624. 9 U.S.C. § 16 (interlocutory orders compelling arbitration are not appealable).

B.    The Injunction Appeal (App. Case No. 01-16079)

MedPartners argues that we have jurisdiction over appeal No. 01-16079 as it is an appeal from a "final judgment" because the Omnibus Order resolved all issues before the district court in case No. 01-8748. Involved in MedPartners's argument that the Omnibus Order is a "final judgment" is an assumption that district court case No. 01-8748 (MedPartners's injunction lawsuit) was never consolidated with district court case No. 01-8747 (MedPartners's breach of contract/fraud lawsuit). MedPartners's argument fails because it is based upon an erroneous assumption.

MedPartners's injunction lawsuit (No. 01-8748) was consolidated with MedPartners's breach of contract/fraud lawsuit (No. 01-8747). Absent certification pursuant to Fed. R. Civ. P. 54(b), when two cases are consolidated for all purposes, both cases must be final for either one to be appealed as a "final judgment." Bank South Leasing, Inc. v. Williams, 769 F.2d 1497, 1500 n.1 (11th Cir. 1985), vacated on other grounds, 778 F.2d 704 (11th Cir. 1985). And, when

16

two cases that are closely related and that could have been brought as one action are consolidated, and when it is unclear whether the consolidation was for all purposes, the two cases should be treated as consolidated for all purposes. See Brown v. United States, 976 F.2d 1104, 1107 (7th Cir. 1992) (stating that cases where extent of consolidation is unclear should be treated as consolidated for all purposes); see also Hageman v. City Investing Co., 851 F.2d 69, 71 (2d Cir. 1988) (declaring "strong presumption" against appealability in consolidated cases not disposing of all claims even when extent of consolidation not clear).

We treat MedPartners's two Alabama cases -- cases that are closely related and could have been brought together and which were later consolidated for unspecified reasons -- as if they were consolidated for all purposes. Because both cases (Nos. 01-8747 & 01-8748) must be final for us to have jurisdiction over an appeal from either one as a final judgment, and because MedPartners's breach of contract/fraud lawsuit (No. 01-8747) was merely stayed pending arbitration (and thus not brought to an end), we cannot take jurisdiction over this appeal from case No. 01-8748 as an appeal from a "final judgment."

MedPartners makes an alternative jurisdictional argument. They say that, even if there has been no "final judgment" in district court case No. 01-8748 by virtue of the case's consolidation with district court case No. 01-8747, the

17

Omnibus Order dissolved an injunction in case No. 01-8748; and, therefore, the Order is immediately appealable under Section 1292(a)(1) because it "dissolv[ed]" an injunction.  See 28 U.S.C. § 1292(a)(1) (granting courts of appeals jurisdiction over interlocutory appeals from orders dealing with injunctions); Am. Express Fin. Advisors, Inc. v. Makarewicz, 122 F.3d 936, 939 (11th Cir. 1997)(recognizing that 28 U.S.C. § 1292(a)(1) grants jurisdiction over interlocutory orders "refusing or dissolving injunctions").  This contention is correct.  We exercise jurisdiction over this appeal to the extent that it seeks interlocutory review of an injunctive order.[10] Because we have interlocutory jurisdiction, Orthopedic Center's motion to dismiss the appeal for lack of jurisdiction is denied.[11]

II.    Merits

---

[10] According to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16, an appeal can be taken from "an interlocutory order granting, continuing, or modifying an injunction *against an arbitration*." 9 U.S.C. § 16(a)(2)(emphasis added).  Because we have jurisdiction over a "dissolved" injunction based upon the language of 28 U.S.C. § 1292(a)(1), we need not decide if the "modifying" language of the FAA applies to these facts.

[11] Because no "final judgment" is associated with appeal No. 01-16079, appellate jurisdiction over the cross-appeal submitted by Orthopedic Center is lacking.  See Swint v. Chambers Cty. Comm'n, 115 S.Ct. 1203, 1210 (1995)(stating that courts of appeals do not have discretion to review orders that are "neither independently appealable nor certified by the district court").  The Supreme Court has made clear that courts of appeals should be reluctant to exercise jurisdiction over "related rulings that are not themselves appealable." Id. at 1212.  In addition, Orthopedic Center has not argued that the district court's decisions on attorneys' fees and on the dissolved injunction are so "inextricably intertwined" that we must exercise pendant appellate jurisdiction to review both decisions together.  Id.  We dismiss the cross-appeal for want of jurisdiction.

18

The appeals brought by MedPartners present two questions on the merits. Whether the district court erred by compelling arbitration. And, whether the district court erred by dissolving the injunction. Although we do not have jurisdiction over appeal No. 01-15929 from district court case No. 99-8624 (Orthopedic Center's lawsuit in which the district court compelled arbitration), our review of appeal No. 01-16079 -- an appeal from district court case No. 01-8748 (MedPartners's injunction lawsuit) over which we do have jurisdiction -- requires us to address both of the questions presented.

A.     Compelling Arbitration

MedPartners does not dispute that arbitration on some of Orthopedic Center's claims is appropriate. MedPartners only disputes the arbitrability of the anticipatory-repudiation claim and argues the district court erred by compelling arbitration on that claim. MedPartners contends that Orthopedic Center's anticipatory-repudiation claim was outside the scope of the Agreement's arbitration clauses.

The district court noted that section G of the Agreement "calls for arbitration of any dispute over *any* payments 'owed' or 'due,' *including but not limited to* monthly payments." The district court determined a plain reading of section G included debts "owed" or "due" resulting from a breach of contract. The district court also concluded that allegations in the amended complaint -- that MedPartners accused Orthopedic Center of a lack of industry, stopped paying monthly guaranteed wage payments, threatened unilateral contract termination with its May 1999 letter, and sued Orthopedic Center for fraud and breach of contract -- were sufficient allegations of breach of contract to invoke the arbitration requirement of section 6.2(d)("The [allegations of breach] shall be resolved by binding arbitration . . . ."). The district court ordered the parties to arbitrate the anticipatory-repudiation claim in accord with the Agreement.

MedPartners mainly argues on appeal that the district court incorrectly read the arbitration provisions of the Agreement. MedPartners, in turn, advances a much narrower reading of those provisions. MedPartners reads section G as requiring arbitration to resolve a dispute about the "amount" of a past-due monthly payment. The section contemplates no arbitration for "all" contract claims, "including claims for future damages." MedPartners also argues that section 6.2 concerns the arbitration procedures used to determine whether one of the parties

20

has proper grounds upon which to terminate the contract. Because MedPartners served no demand for arbitration to terminate the contract, section 6.2 compels no arbitration. The section was not designed, argues MedPartners, to resolve general contract claims or claims for future damages.

The FAA reflects a "liberal federal policy favoring arbitration agreements" and "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S.Ct. 3346, 3353 (1985)(internal quotation marks and citations omitted). The Act requires the courts to "rigorously enforce agreements to arbitrate." Id. "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues *should be resolved in favor of arbitration* . . . ." Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 103 S.Ct. 927, 941 (1983))(emphasis added).

Where no ambiguity exists in an agreement to arbitrate, "the language of the contract [ ] defines the scope of disputes subject to arbitration." Equal Employment Opportunity Comm'n v. Waffle House, Inc., 122 S.Ct. 754, 762 (2002). And we will compel no arbitration of issues that are outside an agreement

21

to arbitrate. Id. at 764 ("While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.").

We believe the language of the Agreement requires arbitration of the anticipatory-repudiation claim pressed by Orthopedic Center. MedPartners's narrow reading of the Agreement is unpersuasive. Section 6.2(d) of the Agreement plainly requires arbitration for breach of contract claims. And "[t]he doctrine of anticipatory repudiation is part of the law of contracts in Florida." Blue Lakes Apartments, Ltd. v. George Gowing, Inc., 464 So.2d 705, 708 (Fla. 4th DCA 1985)(quoting Southern Crane Rentals, Inc v. City of Gainesville, 429 So.2d 771, 773 (Fla. 1st DCA 1983)). Because the Agreement clearly requires arbitration for breach of contract claims generally, the Agreement must also require arbitration for a more specific anticipatory-breach-of-contract claim.

The argument of MedPartners that the Agreement -- under section G -- permits arbitration only of controversies over past due amounts, and not future amounts, is unavailing. "Where an obligor repudiates a duty before he has committed a breach by non-performance and before he has received all of the agreed exchange for it, his repudiation alone gives rise to a claim for damages for

total breach." Id. (quoting Hosp. Mort. Group v. First Prudential Dev. Corp., 411 So.2d 181, 182 (Fla. 1982), itself quoting Restatement (Second) of Contracts § 253 (1979)). If Orthopedic Center prevails on its claim that MedPartners has breached the agreement, Orthopedic Center will be immediately entitled to all damages arising from that breach. Nat'l Educ. Center, Inc. v. Kirkland, 635 So.2d 33, 34 (Fla. 4th DCA 1993)("A non-breaching party is entitled to recover the benefit of its bargain under a contract. Under the facts of this case, such benefit would include all damages, past and future."). Future payments owing from MedPartners to Orthopedic Center under an anticipatory-breach theory will become presently due and, thus, embraced by the requirements of section G, which compels arbitration for disputed amounts then-owing or due.

We can offer no improvement on the district court's insight on the matter: "To conclude otherwise would allow MedPartners to avoid arbitration simply through artful pleading and would seem to require a separate arbitration each month for the twelve remaining years on the life of the contract." See also Nat'l Educ. Center, Inc., 635 So.2d at 34 (where "*one [party] notifies the other unequivocally that he will not perform . . .* [that party may be sued] *at once for an entire breach of the contract,* without waiting for the expiration of the time it would take to complete the contract, and can recover as damages the same profits

that he would have earned had he entirely performed the contract")(quoting

Sullivan v. McMillan, 26 Fla. 543, 8 So. 450 (Fla. 1890))(emphasis in original).

The district court correctly compelled arbitration -- in accord with the Agreement -- of the anticipatory-repudiation claim.[12]

B.    Dissolving the Injunction

Because the district court properly compelled arbitration in this case, it reasonably follows that the district court properly dissolved the injunction prohibiting AAA from conducting that arbitration. MedPartners argues that injunctions against specific arbitrators can be permissible, but does not discuss the critical issue: whether AAA, as a substantive matter, should have been (and should continue to be) enjoined in this case.

---

[12] The district court also found the parties contracted for the arbitration of arbitrability (or the determination by the arbitrators whether the parties contractually agreed to arbitrate a particular claim). The parties agreed to be bound by the procedural rules of the AAA. After making this agreement, the AAA amended its rules to include a rule allowing the arbitrators to determine arbitrability. The district court concluded the parties implicitly agreed to this amendment and, because the arbitrators earlier determined the anticipatory-repudiation claim was within the arbitration clause of the Agreement, the district court compelled arbitration on this alternative ground. Because we also determine the anticipatory-repudiation claim was part of the agreement to arbitrate, we decline to answer whether the parties truly agreed to the amended AAA rule granting arbitrators authority to determine arbitrability.
     We have considered MedPartners's remaining arguments against compelling arbitration on the anticipatory-repudiation claim and conclude they are without merit.

24

MedPartners mainly argues that the district court erred by relying on the idea that arbitral immunity protects arbitrators from suit for injunctive, as well as monetary, relief. No need exists, however, to decide whether arbitral immunity protects arbitrators from suits seeking only injunctive relief. Even if arbitral immunity does not prevent all injunctions against arbitrators, but see Tamari v. Conrad, 552 F.2d 778 (7th Cir. 1977) (arbitral immunity protects arbiter from injunctive relief), the injunction in this case was improperly entered and ripe to be dissolved:[13] the Agreement required the parties to arbitrate the anticipatory-repudiation claim.

We affirm the portion of the district court's order dissolving the injunction ab initio.[14]

Appeal No. 01-15929 – including the cross-appeal – is DISMISSED for want of jurisdiction and, in Appeal No. 01-16079, the district court's order is AFFIRMED, except that the cross-appeal is DISMISSED for want of jurisdiction.

---

[13] MedPartners makes another argument -- that the district court erred by relying on Florida, instead of Alabama, law when determining whether injunctive relief against arbitrators is ever allowed -- without explaining how this choice-of-law decision is material to our determination of whether this injunction is now due to be dissolved. We, therefore, do not address this argument.

[14] Because the issue was not raised by the parties, we express no opinion whether the Alabama injunction was properly dissolved ab initio or, rather, at some later time.